THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE F. SHUPP and JUDITH A. SHUPP   :
                                    :
                    **Plaintiffs**       :
        v.                          :       **3:11-CV-2137**
                                    :       **(JUDGE MARIANI)**
**READING BLUE MOUNTAIN &**             :
**NORTHERN RAILROAD COMPANY**           :
                                    :
                    **Defendant**        :

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs' Motion to Remand (Doc. 4) pursuant to

28 U.S.C. § 1447.  Plaintiffs initially filed this action in the Court of Common Pleas of Wyoming

County, Pennsylvania, and Defendant removed to this Court pursuant to 28 U.S.C. §§ 1441

and 1446.  The pertinent events concern a dispute over land used by a railroad company and

century-old restrictive covenants allegedly governing the use of this land.  Pursuant to FED. R.

CIV. P. 79(b), the Court makes its present ruling based upon the written submissions of the

parties.  For the reasons set forth below, Plaintiffs' motion will be granted, and the matter will be

remanded to the Court of Common Pleas of Wyoming County, Pennsylvania; however,

Plaintiffs' application for an award of attorneys' fees, expenses, and costs will be denied.

## I.    BACKGROUND

In their state-court complaint ("Complaint"), Plaintiffs Dale F. Shupp and Judith A.

Shupp ("Plaintiffs") allege that they are the owners of two parcels of real property located in

Tunkhannock Township, Wyoming County, Pennsylvania.  The Deed to Plaintiffs recites that

1

their property includes a certain parcel of land (the "Soybean Fields") laying between State

Route 92 to the North, the Susquehanna River to the South, a private road known as "Black

Diamond Beach Road" to the West, and the land of a neighbor to the East. Plaintiffs maintain

that the Soybean Fields are bisected East to West by a railroad bed and railroad tracks now

owned by Reading Blue Mountain and Northern Railroad Company ("Defendant"). One of the

bisected portions is bounded by the railroad tracks to the North, the Susquehanna River to the

South, and private lands to the East and West. Plaintiff asserts that the portion of rail line

described above was transferred by Deed in 1911, between the Commonwealth of

Pennsylvania, as Grantor, and The Sunbury and Erie Rail Road Company, as Grantee.

Plaintiffs aver that with regard to the tracks bisecting the Soybean Fields, Defendant is the

successor-in-interest to the Sunbury and Erie Rail Road Company. Plaintiffs further maintain

that as successor-in-interest, Defendant Reading Blue Mountain and Northern Railroad

Company ("Defendant") is owner in fee of the lands supporting the tracks that bisect the

Soybean Fields subject to the railroad deed.

Plaintiffs maintain that there is a restrictive covenant in the railroad deed preventing any

future owner of the railroad property from removing any crossing then in existence or

performing any act as a result of this ownership interest which would be contrary to law.

Furthermore, Plaintiffs aver that at the time the railroad deed came into existence, a crossing of

the canal existed that provided unrestricted access from the Northerly portion of the Soybean

Fields to the Southerly portion of the Soybean Fields. Plaintiffs assert that the crossing

remained until it was removed in the 1990s. Plaintiffs argue that a private road named Black

Diamond Beach Road also was in existence at the time the railroad was created and contained

a rail crossing parallel to and bordering the Western boundary line of the Soybean Fields.  The

rail crossing at Black Diamond Beach Road provided an additional access to the Southerly

parcel of the Soybean Fields.  It is alleged that after the removal of the original rail crossing,

Black Diamond Beach Road became the exclusive access point for the Plaintiffs to reach the

Southerly portion of the Soybean Fields.  Then, in July 2011, Plaintiffs claim that Defendant

removed the crossing at Black Diamond Beach Road.  Plaintiffs argue that they did not give

permission for Defendant to remove the crossing, Defendant did not have the authority to

remove it, and Defendant did not provide notice of the removal, so that, as a result, their

Southerly parcel is now landlocked.

   Plaintiffs filed suit in the Court of Common Pleas seeking, inter alia, Defendant's

ejection from the railroad tracks on Plaintiffs' property and a mandatory injunction requiring

Defendant to reconstruct certain railroad crossings.  Defendant maintains that the Soybean

Fields are not landlocked by virtue of a crossing at the Northern part of the parcel.  Defendant

further avers that the state court has no jurisdiction over this matter under the Interstate

Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10501, et seq., the Federal

Rail Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq., or the Railroad Safety Improvement Act

of 2008, ("RSIA"), 49 U.S.C. § 10101, et seq., and that the matter is properly before the District

Court.

II.   **DISCUSSION**

**A. Subject Matter Jurisdiction**

A federal court has an obligation to ensure that it possesses the requisite subject matter

jurisdiction to hear a particular matter, even if the propriety of that jurisdiction is not raised by

the parties.  See Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc., 905 F.2d 42, 45

(3d Cir. 1990).  Parties are unable to waive a lack of subject matter jurisdiction or confer it upon

the court by consent.  See Brown v. Phila. Hous. Auth., 350 F.3d 338, 346 (3d Cir. 2003).  In

removal cases, "[i]f at any time before final judgment it appears that the district court lacks

subject matter jurisdiction, the case shall be remanded."  See Meritcare Inc. v. St. Paul Mercury

Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999)(citing 28 U.S.C. § 1447(c)), *overruled on other*

*grounds by* Exxon Mobil Corp. v. Allapattah Svcs., Inc., 545 U.S. 546, 125 S.Ct. 2611, 162

L.Ed.2d 502 (2005).

1.   **Removability Under Complete Preemption Corollary to the Well-Pleaded**
     **Complaint Rule**

A defendant may remove an action originally instituted in state court whenever the federal

court would have original jurisdiction over the matter.  See Caterpillar, Inc. v. Williams, 482 U.S.

386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).  The moving party possesses the burden of

showing that removal was proper and that "the action is properly before the federal court."  See

Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005); see also Boyer v. Snap-on

Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Section 1441(a) must be "strictly construed

against removal" with all doubts resolved in favor of remand.  See Sikirica, 416 F.3d at 219.

In matters in which plaintiffs and defendants lack complete diversity, federal jurisdiction is predicated solely upon the existence of a federal question as defined by 28 U.S.C. § 1331. That statute holds, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The question of what constitutes an action "arising under" federal law is a well-trodden path, buttressed by black-letter rules.

An action "arises" under federal law when "the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." Louisville & N.R. Co. v. Mottley, 211 U.S. 149, 152 (1908). To satisfy § 1331's "arising under" requirement, a plaintiff's well-pleaded complaint must raise a federal question, but because the plaintiff is the master of the claim, it is possible that he may intentionally "avoid federal jurisdiction by exclusive reliance on state law." See Caterpillar, 482 U.S. at 392 (internal citations omitted). In this case, Defendant contends that federal question jurisdiction exists because its rights are governed by the ICCTA, a federal statute. The Complaint, however, does not seek relief under the laws of the United States, and instead, pleads for condemnation and a mandatory injunction under Pennsylvania and common law.

Plaintiff cannot use artful pleading as a means to circumvent removal jurisdiction by cloaking a federal claim in the fabric of state law. Thus, even when a cause of action is created by state law, the matter may nonetheless "arise" under federal law if "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one [of the] claim[s] is 'really' one of federal law." See Franchise Tax Bd. Of State of

Cal. v. Construction Laborers, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In such

an instance, however, the federal question must be necessary to the claim, as it is "settled law

that a case may not be removed to federal court on the basis of a federal defense, including the

defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if

both parties concede that the federal defense is the only question truly at issue." See

Caterpillar, 482 U.S. at 393 (citing Franchise Tax Bd., 463 U.S. at 12).

    Defendant posits that Plaintiffs' claims arise under federal law because a vindication of its

rights to prevent Plaintiff from using a variety of state law claims, including ejectment of

Defendant from tracks on Plaintiffs' property rests, in actuality, entirely upon a federal statue.

Specifically, Defendant argues that Plaintiffs' state law causes of action are preempted by the

ICCTA, RSIA, and the FRSA, and that removal is proper given Congress's intent to prevent

states from interfering with railroad operations that affect interstate commerce.  Such an

assertion is incorrect.  Although the Court understands that in certain cases federal question

jurisdiction may exist when a "substantial, disputed question of federal law is a necessary

element of one of the well-pleaded state claims," Franchise Tax Bd., 463 U.S. at 23, such

instances are limited.

    Accordingly, removal to Federal Court is proper under the complete preemption corollary to

the well-pleaded complaint rule. See Caterpillar, 482 U.S. at 393.  "The complete preemption

doctrine permits removal to a federal court under federal question jurisdiction under the

rationale that 'if a federal cause of action completely pre-empts a state cause of action any

complaint that comes within the scope of the federal cause of action necessarily 'arises under'

federal law.'" City of Paterson v. Shannon G., LLC and U.S. Rail Corp., 07-6065, 2008 WL

1995146 (D.N.J. May 5, 2008) (Chesler, J.), *3 (quoting Franchise Tax Bd., 463 U.S. at 23).

"Once an area of state law has been completely pre-empted, any claim purportedly based on

that pre-empted state law is considered, from its inception, a federal claim, and therefore arises

under federal law." Caterpillar, 482 U.S. at 393. The Defendant has not provided, and the

"Court is not aware," see City of Patterson, 2008 WL 1995146, at *3, of any binding authority

that indicates that the ICCTA presents complete preemption of state law. In fact, the reported

cases weigh heavily against this proposition.

The Supreme Court's holding in Beneficial Nat. Bank v. Anderson instructed that "the

proper inquiry focuses on whether Congress intended the federal cause of action to be

exclusive rather than on whether Congress intended that the cause of action be removable."

Beneficial Nat. Bank, 539 U.S. 1, 9 n.5 (2003). Accordingly, the conversion of state law claims

into de facto federal claims is not warranted unless the defendant relies upon a statute that

contains "civil enforcement provisions within the scope of which the plaintiff's state claim falls."

Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 942 (3d Cir. 1988).

The statute must vindicate the "same interest the plaintiff's state cause of action seeks to

vindicate," or "recharacterization as a federal claim is not possible" and removal is unwarranted.

See id.

Complete preemption is a jurisdictional concept originating in Congress's intent to wholly

govern a particular area of law. See In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d 1999)

("Unlike ordinary preemption, which would only arise as a federal defense to a state-law claim,

complete preemption operates to confer original federal subject matter jurisdiction

notwithstanding the absence of a federal cause of action on the face of the complaint."). As the

Third Circuit Court of Appeals explained in Joyce v. RJR Nabisco Holdings Corp., complete

preemption:

> occurs when federal law so completely preempts an entire area of law that the
> state cause of action is entirely displaced by federal law. If this doctrine applies,
> the district court has removal jurisdiction, even if the well-pleaded complaint rule
> is not satisfied. However, if a state claim does not come within this doctrine, the
> well-pleaded complaint rule still applies, and the district court does not have
> removal jurisdiction unless a federal cause of action is pled.

Joyce, 126 F.3d 166, 171 (3d Cir. 1997) (internal citations omitted). The complete preemption

doctrine is premised, therefore, upon the idea that some state law claims are, in reality, federal

claims. Complete preemption implicitly mandates the existence of an exclusive federal cause

of action requiring a state law claim to be re-characterized as a federal action. See Beneficial

Nat'l Bank, 539 U.S. at 9 n.5.

Given the lack of complete preemption, as demonstrated by the absence of any case law

holding that the ICCTA completely preempts state law, and the Supreme Court's holding in

Caterpillar, 482 U.S. at 393, that a case may not be removed to federal court even on the

defense of preemption, the Court is required to remand the present action. The same is true

with regard to Defendant's appeals to the RSIA and the FRSA. Nevertheless, this opinion

should not be construed to indicate that Defendant lacks a viable preemption argument as a

defense employable in a state court proceeding; however, Defendant's defense is precisely

that—a *defense*. The circumstances underlying this particular case preclude the Court from

finding that Defendant's invocation of the ICCTA forms the basis of an action "arising under" federal law. It is raised as a defense, and forms no part of Plaintiff's claim.

## 2. "As Applied" Analysis is Inapplicable to Determination of Whether Preemption Serves as a Basis for Removal, But Confirms Lack of Complete Preemption

In making a determination as to whether a claim "arises under" federal law in the context of preemption, courts must draw a distinction between ordinary preemption and complete preemption. Ordinary preemption occurs when a federal statute supersedes a state statute by virtue of the Supremacy Clause. It is the most common form of preemption, and allows federal law to preempt state or local laws without raising the inference that the underlying cause of action "arises under" federal law for the purpose of removal. Simply put: ordinary preemption is not a jurisdictional concept and does not confer any authority upon the federal court to hear matters on removal that would otherwise be appropriate for adjudication in a state forum.

Ordinary preemption occurs when a state or local law, order, or regulation conflicts with federal law. The Supremacy Clause mandates that in such circumstances, federal law prevails. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (internal citations omitted). A federal defense to the enforcement of a state law can potentially overcome the subject state law claim. A determination as to whether a particular federal law preempts the state law is not in itself a federal question; accordingly, the mere possibility of preemption does not constitute a basis for federal jurisdiction. See Ry. Labor Execs Ass'n, 858 F.2d at 941-42. Given the jurisdictional prohibition that chastens federal tribunals, state courts are empowered to resolve preemption issues through the application of relevant federal law raised as defenses. See id.

9

at 942. As the Third Circuit held in Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995),

"[t]he difference between preemption and complete preemption is important. When the doctrine

of complete preemption does not apply, but the plaintiff's state claim is arguably preempted . . .

the district court, being without removal jurisdiction, cannot resolve the dispute regarding

preemption." Id. at 355; see also Rosenkrans v. Wetzel, 131 F. Supp. 2d 609, 613 (M.D. Pa.

2001)(remand is necessary when the state law claim is arguably preempted). The Dukes

Court continued: "It lacks power to do anything other than remand to the state court where the

preemption issue can be addressed and resolved." Id. (citations excluded).

Defendant urges that an "as applied" framework should govern this Court's analysis as to

whether complete preemption supports original jurisdiction for the purpose of determining the

propriety of removal. An examination of the case law provides a labyrinth of rules and

conflicting holdings. Ultimately, however, the question of whether "complete preemption" exists

under the ICCTA, FRSA, and RSIA is the only relevant inquiry.

The few cases treating this topic within the Third Circuit provide less than complete

guidance. In City of Patterson, 2008 WL 1995146 (D.N.J. May 5, 2008, Chesler, J.), at *2-3,

the District of New Jersey declined to exercise jurisdiction because federal preemption under

the ICCTA was raised as a defense, and not "as a necessary element of Plaintiff's eminent

domain claim." Similarly, in Railroad Const. Co. of South Jersey v. A.P. Const., Inc., 2011 WL

2975204 (D.N.J. July 21, 2011, Rodriguez, J.), the District of New Jersey found that removal

was improper because Plaintiff's claims were based on common law and because although the

claims might "implicate" the ICCTA, they did not "arise under" the ICCTA as required by 28

U.S.C. § 1337.

Other circuits adhere to differing views as to whether the ICCTA completely preempts state

law. The First Circuit has specifically recognized the confusion which surrounds "complete

preemption" as applied to the ICCTA throughout the federal courts. See Fayard v. Northeast

Vehicle Serv., LLC, 533 F.3d 42 (1st Cir. 2008). In Fayard, the court held that the ICCTA did

not "completely preempt" a nuisance claim, thus precluding the defendant's attempt at removal.

See id. at 48. Importantly, the court noted that the "lower courts are divided over [the] specific

applications" of complete preemption to the ICCTA, see id. at 46, but the court further

recognized that "one circuit has already held that the ICCTA can sometimes support complete

preemption." Id. (citing PCI Transp., Inc. v. Fort Worth & W. R.R. Co., 418 F.3d 535 (5th Cir.

2005)(emphasis added). Later in its opinion, the First Circuit also makes the observation that

"if this were a suit under state law to hold a railroad rate unlawful, complete preemption might

be arguable, given the ICCTA's exclusive federal regulation of such rates and its explicit

damages remedy." Id. at 48 (emphasis added). The fact that the First Circuit hints that

complete preemption "might be arguable," as opposed to providing a more forceful rule, is

revealing in that it demonstrates the significant lack of clarity surrounding this area of law.

In a series of recent cases the Fifth Circuit provides a corpus of seemingly contradictory

holdings. In Franks Investment Company LLC v. Union Pacific R.R. Co., 593 F.3d 404 (5th Cir.

2010), the court, sitting en banc, recognized that complete preemption under the ICCTA does

not exist. The rest of the court's analysis involved the "more common, indeed, the ordinary

category of preemption." Id. at 408. When the court adopted the STB's as-applied preemption analysis, it did not do so for a determination as to whether complete preemption, for jurisdictional purposes, was appropriate. It did so only in the context of ordinary preemption. Furthermore, much of the court's decision was based upon the Fifth Circuit's prior holding in New Orleans & Gulf Coast Railway Co. v. Barrois, 533 F.3d 321 (5th Cir. 2008). In Barrois, the court held that "[t]he STB has articulated a comprehensive test for determining the extent to which a particular state action or remedy is preempted by § 10501(b). However, the STB's test applies to ordinary preemption analysis under § 105101(b); the test does not necessarily apply to complete preemption." Id. at 332 (emphasis added). The Court then considered the test articulated in the STB's Maumee & W. R.R. Corp. and RMW Ventures, LLC-Petition for Declaratory Order, STB Finance Docket No. 34354, 2004 WL 395835 (S.T.B. March 2, 2004), in which the STB held that "[R]outine, non-conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks." Id. at *2. The Fifth Circuit's use of this STB matter in Barrois, however, is restricted to an ordinary preemption analysis.

In declining to exercise federal jurisdiction the Barrois court noted that the railroad raised an "as-applied" challenge to the Louisiana state law at issue; however, the railroad did "not argue why the STB's test for ordinary preemption under the ICCTA should also govern or help define the scope of the distinct jurisdictional doctrine of complete preemption." Id. at 333. "More specifically, the Railroad fails to explain whether and why the fact-intensive inquiry for as-

applied preemption challenges should be considered as part of a complete preemption analysis under § 10501(b)." Id. Nevertheless, the court declined to "define the precise contours of the complete preemption doctrine under the ICCTA." Id. at 334.

The Fifth Circuit's most recent treatment of complete preemption deviated somewhat from its earlier cases in the matter of Elam v. Kansas City Southern Railway Co., 635 F.3d 796 (5th Cir. 2011). Without explicitly abrogating Franks, supra, or Barrois, supra, the court used an "as-applied" analysis to determine the appropriateness of complete preemption. See Elam, 625 F.3d at 808. Specifically, the court held that "[c]omplete preemption applies only when a plaintiff's claim directly attempts to manage or govern a railroad's decisions in the economic realm." Id. In Elam, the court engaged in the fact intensive analysis eschewed in its previous holdings. The court ultimately found, after engaging in this factual analysis that the complete preemption corollary applied to some of the claims, but not to others. Accordingly, the court held that federal jurisdiction was proper, and thus removal was proper, under the complete preemption corollary to the well-pleaded complaint rule. Several district courts within the Fifth Circuit have followed this test, although others have expressed hesitation. See, e.g., St. Bernard Port, Harbor & Terminal Dist. V. Violet Dock Port, Inc., LLC, 2011 WL 3746418, at *10 (E.D. La. Aug. 25, 2011)(citing City of Paterson, 2008 WL 1995146, at *2-3 (D.N.J. 2008)(citing City of Patterson with approbation).

Several district courts in other circuits have indicated a willingness to engage in an "as-applied" analysis as suggested by the Fifth Circuit in Elam. In particular, in City of Lincoln v. Lincoln Lumber Co., 2006 WL 1479043 (D. Neb. May 23, 2006), the District of Nebraska

engaged in an "as-applied" analysis to determine whether complete preemption served as a

basis for removal. Although the court ultimately remanded the matter to the state court, the

very analysis it used is that suggested by Elam.

In Allied Indus. Dev. Corp. v. Ohio Cent. R.R., Inc., 2010 WL 987156 (N.D. Ohio March 15,

2010), the Northern District of Ohio confronted a removal action from a state court suit

concerning a plaintiff's request that the defendant railroad abandon service over rail lines

running over specific parcels. The court remanded the case to the state court because it did

not find that the facts alleged triggered preemption. Id. at *3. Thus, although finding removal

inappropriate, the court engaged in a factual analysis, "as-applied," to determine whether the

particular circumstances underlying the matter warranted "complete preemption."

In Rawls v. Union Pacific R.R. Co., 2010 WL 892115 (W.D. Ark. Mar. 9, 2010), Judge Harry

Barnes held that Fayard, supra, stood for the proposition that complete preemption could be

found after a court engages in an analysis of the facts underlying an action. See id. at 4.

Furthermore, Judge Barnes wrote that "the Court recognizes that preemption under the ICCTA

is a factual issue that is determined on a case-by-case basis." Id. at 4. Again, this follows the

logic of Elam (although Elam was issued later) permitting a case-by-case, "as-applied" analysis.

In Canadian Nat. Railway Co. v. Montreal, Maine & Atlantic Railway, Inc., 750 F. Supp. 2d

189 (D. Me. 2010), the District of Maine held that removal of a claim concerning an easement

over railroad lands was proper under the complete preemption corollary. Adopting the

framework set forth by the First Circuit in Fayard, supra, the Court made a substantial

assumption based upon the Circuit's dicta that the ICCTA "can sometimes support complete

preemption." Canadian Nat. Railway Co., 750 F. Supp. 2d at 194. It followed a line of analysis that assumed that the First Circuit had definitively ruled on complete preemption, even though the Fayard court expressly declined to set-out a bright line rule.

The adoption of a case-by-case, "as-applied" analysis presents a logical conundrum in application of the "complete preemption" doctrine in that an area of law cannot be "completely" preempted when complete preemption can be found to be present or absent based on an individualized, case-by-case analysis. When a court recognizes that a broad policy of "complete preemption" does not exist with regard to a particular area of law, such as the ICCTA, RSIA, or FRSA, then no amount of factual analysis, in particular circumstances, should be able to create complete preemption. Complete preemption exists or it does not. See, e.g., the complete preemption under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, as stated in Allis Chalmers Corp. v. Lueck, 471 U.S. 202 (1985). Complete preemption does not arise in some circumstances while retreating when the facts of a particular case arguably support a finding of "ordinary preemption." Having to engage in an "as-applied" analysis is inherently antithetical to the concept of complete preemption.

The "as-applied" analysis is appropriate when trying to determine whether ordinary preemption applies to particular facts in an ICCTA matter; however, when exceptions to preemption such as routine at-grade crossings and utility easements are recognized by a variety of district and circuit courts, as well as by the STB, it is difficult, if not impossible, to reconcile such exceptions with a "complete preemption" policy that, by definition, displaces all conflicting state and common laws.

15

Upon remand, it is incumbent upon the state court to determine whether the railroad's

defense of preemption exists under an "as applied" analysis as a matter of ordinary preemption.

Defendant's contention that an "as applied" analysis is necessary to determine complete

preemption for the purpose of remand poses an inherent contradiction; the fact that Defendant

makes this argument in the first place demonstrates the inappropriateness of removal. If the

Court has to make a determination as to the degree to which the railroad is burdened, then, by

definition, there can be no complete preemption. The ICCTA does not completely preempt

state law, and accordingly, does not provide a basis for removal.

It is clear that the ICCTA broadly governs rail transportation, and provides the Surface

Transportation Board ("STB") with exclusive jurisdiction over:

(1) Transportation by rail carriers, and the remedies provided in this part with respect to

rates, classifications, rules (including car service, interchange, and other operating

rules), practices, routes, services, and facilities of such carriers; and

(2) The construction, acquisition, operation, abandonment, or discontinuance of spur,

industrial, team, switching, or side tracks, or facilities, even if the tracks are located,

or intended to be located, entirely in one State. . . .

49 U.S.C. § 10501(b). The straightforward text of the ICCTA indicates that the STB's

jurisdiction over railroad activity is broad; however, as many courts note, it is not absolute.

"Under the ICCTA, the STB has exclusive jurisdiction over 'transportation by rail carrier' and its

regulation of rail carriers preempts state regulation with respect to rail transportation." Hi Tech

Trans, LLC v. New Jersey, 382 F.3d 295, 305 (3d Cir. 2004). Nevertheless, the STB's own

decision in Maumee & Western Railroad Corp. and RMW Ventures, LLC Petition for Declaratory Order, demonstrates that "broad Federal preemption does not completely remove any ability of state or local authorities to take action that affects railroad property." STB FINANCE 34354, 2004 WL 395825 at *1 (S.T.B. March 3, 2004). "To the contrary, state and local regulation is permissible where it does not interfere with interstate rail operations. . . ." Id. at *1-2. As the Third Circuit explained in New York Susquehanna and Western Railway Corp. v. Jackson, 500 F.3d 238 (3d Cir. 2007), the ICCTA preempts all "state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." Id. at 252. "What matters is the degree to which the challenged regulation burdens rail transportation. . . ." Id. The Third Circuit's decision in New York Susquehanna and Western Railway Corp., supra, quoted above, indicates to this Court that the ICCTA does not present complete preemption of all state law, requiring, as it does, a determination in each case of the "degree to which the challenged regulation burdens rail transportation." That decision, together with the rule announced in Catterpillar, supra, that a federal defense of preemption does not present a basis for removal, compels this Court's decision to remand this matter to state court.

While the text of ICCTA § 10501(b) specifically mandates that jurisdiction for all matters "managing or governing rail transportation" is vested in the STB, this language does not vest original jurisdiction in the federal district court for the purpose of removal. When the ICCTA is raised as a defense to a cause of action founded on state law, the ICCTA requires that any

action "that may reasonably be said to have the effect of managing or governing rail transportation" be referred to the STB. Nothing in the text of the ICCTA vests exclusive jurisdiction in the federal district court. To the contrary, state courts are competent to render decisions with regard to the preemption issue. If a state court makes a determination that a particular cause of action is preempted by the ICCTA, or any other federal statute, then that court should dismiss the action and the parties can raise the matter before the STB.

## III.   EXPENSES, COSTS, AND ATTORNEYS' FEES

District courts have broad discretion to determine whether an award of expenses, costs, and attorneys' fees are appropriate following a motion to remand. See Mints v. Educ. Testing Serv., 99 F.3d 1253, 1260 (3d Cir. 1996). Pursuant to 28 U.S.C. § 1447(c), "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Court need not determine whether the parties acted in bad faith, but must use its discretion to determine whether the substantive basis for the petition was "frivolous" or "insubstantial." See Mints, 99 F.3d at 1261.

In the present matter, all parties and their counsel engaged in fair and honest arguments concerning the merits of their respective positions; accordingly, the Court finds that an award of expenses, costs, and attorneys' fees is inappropriate.

## IV.    CONCLUSION

For the reasons set forth in this Memorandum, Plaintiffs' Motion to Remand shall be

granted.  An appropriate Order will follow.

Robert D. Mariani
United States District Judge